## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONALD POINDEXTER**                                    **CIVIL ACTION**

**versus**                                                              **NO. 14-2267**

**N. BURL CAIN**                                                 **SECTION: "C" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Ronald Poindexter, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On September 10, 2009, he was convicted of attempted second

degree murder and attempted first degree murder under Louisiana law.[1]  On January 14, 2010, he was found to be a fifth offender and was sentenced as such on each count to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2]  On June 10, 2011, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudications, and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on January 13, 2012.[4]

On or about January 4, 2013, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on May 30, 2013.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on November 21, 2013,[7] and by the Louisiana Supreme Court on September 12, 2014.[8]

---

[1] State Rec., Vol. II of VII, transcript of September 10, 2009, p. 113; State Rec., Vol. I of VII, minute entry dated September 10, 2009; State Rec., Vol. I of VII, jury verdict forms.

[2] State Rec., Vol. V of VII, transcript of January 14, 2010; State Rec., Vol. I of VII, minute entry dated January 14, 2010.

[3] State v. Poindexter, No. 2010 KA 1516, 2011 WL 3244527 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. I of VII.

[4] State v. Poindexter, 77 So.3d 951 (La. 2012) (No. 2011-KO-1526); State Rec., Vol. I of VII.

[5] State Rec., Vol. I of VII.

[6] State Rec., Vol. I of VII, Judgment and Reasons for Judgment dated May 30, 2013.

[7] State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[8] State ex rel. Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

On or about October 1, 2014, petitioner filed the instant federal application seeking *habeas corpus* relief. The state concedes that the application is timely.[9]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary

---

[9] Rec. Doc. 13, p. 9.

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has held:  "[A] state-court decision is an unreasonable application of our clearly established

precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the

facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However,

the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state
> court unreasonably applies this Court's precedent; it does not require
> state courts to extend that precedent or license federal courts to treat
> the failure to do so as error.  Thus, if a habeas court must extend a
> rationale before it can apply to the facts at hand, then by definition
> the rationale was not clearly established at the time of the state-court
> decision.  AEDPA's carefully constructed framework would be

> undermined if habeas courts introduced rules not clearly established
> under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that

the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552

U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535

U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent

simply does not warrant _habeas_ relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

  While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
>  If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue
> the writ in cases where there is _no possibility_ fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents.  It goes no farther.  Section 2254(d) reflects the view that
> habeas corpus is a guard against _extreme malfunctions_ in the state
> criminal justice systems, _not a substitute for ordinary error
> correction through appeal.  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement._

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

      The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

      On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On March 4, 2009, Houma Police Department Assistant Chief
> of Detectives Dana Coleman responded to 121 Bennett Court, in
> Houma, to help Rene Chaisson and Joseph S. "Tree Man" Medice,
> Jr., who had suffered stab wounds.  Chaisson was sitting at the door
> to the residence.  His speech was unintelligible.  He had been stabbed
> in the upper torso and the leg and was compressing the wound to his
> leg.  When Chaisson briefly removed the compression, the wound
> bled "like a water fountain."  Medice was lying face down inside the
> residence, clutching his chest with both hands.  When he attempted
> to speak, there was a gurgling sound.  Detective Coleman could see
> the interior of Medice's chest through the open wound and could hear
> Medice's body sucking in air as he tried to speak.  Medice had
> seventeen additional stab wounds, including a "deep gash" to his
> forehead.  He spent four days in the intensive care unit of the hospital
> receiving treatment for his wounds.  The wound to his chest was next
> to his heart and "pushed [Medice's] heart over."  At the time of trial,
> he had continuing breathing problems due to stab wounds to his
> lungs.
> During his investigation of the offenses, Detective Coleman
> spoke to Tiffany Marie Diggs.  She implicated defendant, who was

her boyfriend, Shelby Norman, and Dwayne Bias a/k/a "Blue" or "Reggie" in the crimes.  Detective Coleman told Diggs the victims had been stabbed, and she stated, "I sent 'em there to rob 'em, I didn't send 'em there to stab 'em."

Detective Coleman interviewed defendant on March 6, 2009.  After being advised of his Miranda[FN4] rights, defendant claimed he had gone to Chaisson's home alone and stabbed Medice "when things got a little out of hand."  Defendant had $160 on his person and indicated the money had come from Medice from "a dope deal."  Defendant had stab wounds on one of his legs and on his back, but the wounds were "no comparison" to the injuries suffered by the victims, and he did not seek medical treatment for his injuries.  He indicated the knife he used on Medice was at his cousin's home.  Defendant's cousin, Gustavia Brown, was surprised to learn the knife was at her house, and surrendered the knife to the police after defendant directed her to its location.  The knife had a 4" or 5" blade.

[FN4]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The defense did not dispute that defendant had stabbed Chaisson and Medice, but claimed defendant acted in self-defense after Medice attacked him when he refused to "front" drugs to Medice during a drug deal.

Medice gave the following account of the incident.  He had a tree-cutting business and had been paid $1,000 the day before the incident.  On the day of the incident, he took the money to the casino, but still had approximately $960 in his pocket when he visited Chaisson shortly before 7:00 a.m.  On the way to Chaisson's house, Medice saw Alice Chapman and gave her a ride because he was struggling with a drug addiction and wanted "somebody to talk to."  After Medice and Chapman arrived at Chaisson's house, Diggs arrived.  Medice had used drugs with Diggs in the past.  Medice pulled out his money from his pocket to give Chaisson $10 so he could buy tobacco for his cigarettes.  Diggs asked Medice to give her $20, but he refused.  Diggs cursed Medice, and Chaisson told her she had to leave.

According to Medice, shortly after Diggs left, two men knocked on Chaisson's door and he let them into the residence.  One man had braided hair, and the other was shorter.  Prior to trial, Medice identified the man with braids as Shelby Norman.  Medice identified defendant in court as the shorter man.  The men asked

Medice if he was "Tree Man" and when he replied affirmatively, they offered to sell him "some stuff" for $300. Medice asked, "[W]here's it at?" and defendant stated, "I need the money and I'm gon go get it." However, Chapman told Medice not to buy any drugs, so he told the men he did not want anything. Defendant then told Medice, "[H]ow about this, give me all your money?" Medice told defendant to "come get my money." Defendant told Norman to "catch that for me," and Norman grabbed a stick. Defendant told Norman to hit Medice, but he hesitated. Defendant stated, "I told you to hit him[,]" and Norman swung the stick at Medice, but Medice blocked the blow with his arm, breaking the stick. Medice punched Norman and, as he turned to face defendant, was stabbed in the forehead with a pocket knife. Medice removed his own knife from his pocket. Defendant then stabbed Medice in the arm, and the knife stuck in Medice's arm. Medice removed the knife and tried to stab defendant. Medice then felt someone stab him in the back twice. Medice continued to punch defendant, and he continued to stab Medice. Medice continued fighting until he was stabbed with a 9" long butcher knife in his left lung and fell to the floor. He saw Diggs [sic[10]] stab him once in the lung. He told defendant, "I can't fight no more, it ain't worth dying over, the money's in my left-hand pocket." Defendant took Medice's money from his pockets stating, "[Tree Man], you are a mother, but I need the money." Medice heard Chaisson shouting for help and saw defendant punch him to the ground and repeatedly stab him. Medice conceded he had been convicted of possession of cocaine seven or eight years earlier. He denied having any sexual contact with Diggs at Chaisson's house.

Chaisson gave the following account of the incident. Medice was his friend and visited him on the day of the incident. Diggs also visited, but left after arguing with Medice. Fifteen to twenty minutes later, two men came to the house. One of the men demanded that Medice give him money, and Medice told him he did not have any money. Then the man asking for money started struggling with Medice. Chaisson did not see Medice do anything to the men before the struggle started. The man asking Medice for money stabbed him with a knife. The other man picked up a board that Chaisson used for his bed and hit Medice with it, breaking the board. The other man

---

[10] The Court of Appeal's reference to Diggs is a typographical error. In the testimony being summarized, Medice was describing being stabbed by petitioner, not Diggs. State Rec., Vol. II of VII, transcript of September 9, 2009, p. 50.

then walked off.  Chaisson indicated he tried to help Medice and the man asking for money stabbed him twice in his leg, once in his arm, and once in his shoulder.  Chaisson tried to stop the bleeding from his leg with a towel, but it was uncontrollable.  He was released from the hospital after two hours, but continued to suffer pain from his shoulder to his fingers.

Diggs[FN5] gave the following account of the incident.  She was familiar with Medice because she had "trick[ed] with him."  She knew Shelby Norman from her neighborhood.  She had known defendant for about two or three years.  She claimed she was not present during the stabbing, but "knew about it."  According to Diggs, Medice "picked her up" and took her to Chaisson's house.  She had oral sex with Medice at the house and saw him with "[a] good bit of money."  She argued with Medice because she wanted "[her] money."  She left Chaisson's house and told him and Medice to leave the door unlocked because she was going to come back "to smoke more dope."  She then told defendant that Medice had "a lot of money."  She conceded she knew that "they was gon rob him."  She indicated "Blue" had the car.  She stated, "The only thing that ... they was going to rob 'em, they ain't suppose to, whatever, stab 'em."

> [FN5] Diggs indicated she "pled guilty" in connection with the incident and, in exchange for her truthful testimony, received two five year sentences, to run concurrently with each other.[11]

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

In his first claim, petitioner argues that there was insufficient evidence to support his convictions.  On direct appeal, the Louisiana First Circuit Court of Appeal denied relief, holding:

> Defendant first asserts that there was no testimony he entered the house with an intent to commit a murder or formed that intent after entering.  He contends that when Medice gave him the money, he took the money and stopped fighting.

---

[11] State v. Poindexter, No. 2010 KA 1516, 2011 WL 3244527, at *1-3 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. I of VII.

The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, assuming every fact to be proved that the evidence tends to prove, in order to convict, every reasonable hypothesis of innocence is excluded.  State v. Wright, 1998-0601, p. 2 (La.App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 1999-0802 (La. 10/29/99), 748 So.2d 1157, 2000–0895 (La. 11/17/00), 773 So.2d 732.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  Id., 1999-0802 at p. 3, 730 So.2d at 487.

First degree murder is the killing of a human being: when the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration of armed robbery; or when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.  La. R.S. 14:30(A)(1) & (3).  Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.  La. R.S. 14:30.1(A)(1).  Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.  La. R.S. 14:27(A).

To be guilty of attempted murder, a defendant must have the specific intent to kill and not merely the specific intent to inflict great bodily harm.  Specific intent to kill can be implied by the intentional use of a deadly weapon such as a knife or a gun.  State v. Templet, 2005-2623, p. 15 (La.App. 1st Cir. 8/16/06), 943 So.2d 412, 421, writ denied, 2006-2203 (La. 4/20/07), 954 So.2d 158.  Specific intent is the state of mind that exists when the circumstances indicate the

offender actively desired the prescribed criminal consequences to follow his act or failure to act.  La. R.S. 14:10(1).  Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused.   The trier of fact determines whether the requisite intent is present in a criminal case.  State v. Brown, 2003-1076, pp. 910 (La.App. 1st Cir. 12/31/03), 868 So.2d 775, 782, writ denied, 2004-0269 (La .6/4/04), 876 So.2d 76.

In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt as to every element of the offense.  In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.  Id., 2003-1076 at p. 10, 868 So.2d at 782.

After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted first degree murder, attempted second degree murder, and the defendant's identity as the perpetrator of those offenses against the victims.  The jury rejected defendant's theory that he stabbed the victims in self-defense after Medice attacked him to get his drugs.

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt.  State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).  No such hypothesis exists in the instant case.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.  See State v. Calloway, 2007-2306, p. 1 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

The verdict rendered against defendant indicates the jury accepted the testimony offered against him and rejected his attempt to discredit that testimony.  This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient

to prove the elements of the offense.  The trier of fact may accept or reject, in whole or in part, the testimony of any witness.  Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.  State v. Lofton, 1996-1429, p. 5 (La.App. 1st Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 1997-1124 (La. 10/17/97), 701 So.2d 1331.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them.  See State v. Ordodi, 2006-0207, p. 14 (La. 11/29/06), 946 So.2d 654, 662.  It was not irrational for the jury to conclude the defendant acted with specific intent to kill the victims when he went to Chaisson's house to rob Medice; stabbed both victims into submission; took Medice's money from his pocket; left the victims to bleed to death; fled the scene; and hid the weapon at his cousin's house.

This assignment of error is without merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

---

[12]  State v. Poindexter, No. 2010 KA 1516, 2011 WL 3244527, at *3-5 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. I of VII.

[13]  State v. Poindexter, 77 So.3d 951 (La. 2012) (No. 2011-KO-1526); State Rec., Vol. I of VII.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[14]

---

[14] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted

In the instant case, the defense did not dispute that petitioner stabbed the victims. While the defense argued that petitioner acted in self defense, the victims testified otherwise. Generally, a victim's testimony is alone sufficient evidence to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995).  Further, as the state court noted, this case turned on whether the jurors found the victims' testimony credible; the jurors obviously did.  Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner

---

by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under these doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

## B.  Jury Charge

After charging the jury at trial, the judge asked if there were any objections to jury charges.  At that point, defense counsel lodged the following objection:

> MR. LOUQUE [defense counsel]:
>      On page 5 of the jury instructions where it says all persons concerned with the commission of a crime, all the way to the end of that paragraph.  I object to that instruction because Mr. Poindexter is the only one on trial.  There was some evidence at the trial that Tiffany Diggs had already pled guilty to "her role" in these proceedings.
>      I think that jury instruction unfairly gives the jury the impression that it may have to find Ronald Poindexter guilty just because Tiffany Diggs pled guilty.
>
> THE COURT:
>      All right.  Any response, Mr. Lyons?
>
> MR. LYONS:
>      None, Your Honor.
>
> THE COURT:
>      All right.  Well let the objection be noted for the record.  I don't think that the import of the instruction is that which has been described by Mr. Louque, and so let the objection be noted for the record.  And unless Mr. Louque ask [sic] that I instruct the jury in some other fashion to diminish the concern that he has that they might jump to the conclusion that Mr. Poindexter is guilty because Tiffany Diggs pled guilty in this case, then I won't charge the jury any further.  But if Mr. Louque thinks I should, I will.
>      What would you like to do?

MR. LOUQUE:
I believe the jury instruction should be eliminated completely and I don't think there's anything you can do to eliminate what I think is prejudice by this instruction.

THE COURT:
So you have no other instruction you'd like me to give to the jury?

MR. LOUQUE:
No, sir.

THE COURT:
All right, fine.
Any other objection?

MR. LOUQUE:
No, sir.[15]

On direct appeal, the Louisiana First Circuit Court of Appeal rejected petitioner's

challenge to that ruling, holding:

Defendant next maintains that the trial court erred in overruling his objection to the jury charge on the law of principals because he was the only defendant on trial.
The court shall charge the jury as to the law applicable to the case.  La.C.Cr.P. art. 802(1).
The trial court charged the jury on the law of principals as follows:

All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime.  However, mere knowledge of a co-perpetrator's specific intent by a

---

[15] State Rec., Vol. II of VII, transcript of September 10, 2009, pp. 101-03.

> defendant is not sufficient to conclude that the
> defendant himself had specific intent.
>
>   Prior to the charging of the jury [sic[16]], the defense objected
> to the jury charge, contending that defendant was the only defendant
> on trial, evidence at trial indicated Diggs had pled guilty to "her role"
> in the proceedings, and the jury instruction unfairly gave the jury the
> impression it had to find defendant guilty because Diggs pled guilty.
> The trial court disagreed with the interpretation of the jury charge
> asserted by the defense and noted the defense objection for the
> record.
>   There was no error. The duty of the trial judge to charge the
> jury on the law applicable to the case obligates him to "cover every
> phase of the case supported by the evidence whether or not accepted
> by him as true." State v. Krolowitz, 407 So.2d 1175, 1182 (La.
> 1981). The evidence in this case supported a theory of liability based
> on the law of principals. Medice testified he was attacked by at least
> three people. Thus, the trial court was obligated to give the
> challenged jury charge, which carefully tracked the language of La.
> R.S. 14:24 and included the jurisprudential rule that a principal may
> be connected only to those crimes for which he has the requisite
> mental state. See State v. Neal, 2000-0674, pp. 12-13 (La. 6/29/01),
> 796 So.2d 649, 659, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152
> L.Ed.2d 231 (2002).
>   This assignment of error is without merit.[17]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

additional reasons.[18]

  Petitioner now seeks review of this claim in this federal proceeding. However, it is

clear that "[i]mproper jury instructions in state criminal trials do not generally form the basis for

---

[16] As already noted, the objection was in fact lodged after, not before, the jury was instructed.

[17] State v. Poindexter, No. 2010 KA 1516, 2011 WL 3244527, at *5-6 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. I of VII.

[18] State v. Poindexter, 77 So.3d 951 (La. 2012) (No. 2011-KO-1526); State Rec., Vol. I of VII.

federal habeas relief."  Tarpley v. Estelle, 703 F.2d 157, 159 (5th Cir. 1983).  Therefore, a *habeas*

petitioner seeking relief based on a challenge to a jury instruction faces a daunting burden of proof.

As the United States Supreme Court has explained:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.

Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (footnote, citations, and quotation marks omitted).

Moreover, a petitioner's burden is "especially heavy" in cases, such as this one, where the challenged

instruction is not erroneous but instead only arguably incomplete.  Id. at 155 ("An omission, or an

incomplete instruction, is less likely to be prejudicial than a misstatement of the law.").  The

Supreme Court has further noted:

> In determining the effect of this instruction on the validity of [a *habeas* petitioner's]  conviction, we accept at the outset the well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  While this does not mean that an instruction by itself may never rise to the level of constitutional error, it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge.  Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) (citations omitted).

For the reasons explained in detail by the Louisiana First Circuit Court of Appeal, the challenged jury instruction in the instant case was not erroneous.  Because there was more than one individual allegedly involved in the attack on the victims, an instruction on the law concerning principals was obviously appropriate.  Further, the jury charges as whole instructed the jury that the prosecution bore the burden of proof, that petitioner could not be found guilty unless the prosecution proved all elements of the crimes beyond a reasonable doubt, and that the petitioner must be found not guilty if prosecution failed to prove that he committed the charged or lesser included offenses. When considered as a whole, there is simply no basis for concluding that the jury instructions misled the jurors into believing that they must find petitioner guilty or otherwise violated petitioner's right to due process.

### C.  Ineffective Assistance of Counsel

In his remaining five claims, petitioner argues that he received ineffective assistance of counsel at trial.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

- 19 -

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the instant case, petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings.  Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting the claims unless

that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of

- 21 -

waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* Strickland's *deferential standard.*

Id. at 105 (citations omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

In discussing petitioner's claims, the state district court first correctly summarized the general law concerning such claims, noting:

Claims of ineffective assistance of counsel are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.ED2d 674 (1984). In order to prevail, the defendant must show both that (1) counsel's performance was deficient and (2) he was prejudiced by the deficiency. With regard to the second element, i.e., prejudice, the defendant must show that any error was so serious as to deprive him of a fair trial or other proceeding. To

- 22 -

carry this burden, the defendant must show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[19]

The court then addressed each of petitioner's ineffective assistance claims, as follows.

### 1.  Failure to Request Sequestration of Witnesses

Petitioner first argues that his counsel was ineffective for failing to request sequestration of the prosecution's witnesses.  The state district court rejected that claim, holding:

According to the defendant, his trial counsel was ineffective because "counsel excluded all aspects of sequestration."  He complains that "all witnesses sat in the court room and heard each other's testimony and during their testimony actually spoke to each other," all without objection by his attorney.  He further complains in particular that Detective Coleman and Mr. Medice were in the courtroom when Tiffany Diggs testified and that Mr. Medice was in the courtroom when Detective Coleman testified.

Louisiana Code of Evidence article 615 governs the sequestration of witnesses at trial.  That statutory provision provides in pertinent part as follows:

"A.  As a matter of right.  On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion."

"B.  Exceptions.  This article does not authorize exclusion of any of the following:

(1) A party who is a natural person.

---

[19]  State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, p. 4.

(2) A single officer or a single employee of a party which is not a natural person designated as its representative or case agent by its attorney.

(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert.

(4) The victim of the offense or the family of the victim.

A review of the minutes of court and the transcript of the trial indicates that neither the defendant nor the state requested sequestration of any witnesses.  Detective Coleman was the case agent for the Houma Police Department and the state could have easily designated him as such if the defendant had requested sequestration of the witnesses.  Mr. Chaisson and Mr. Medice were the victims of the offenses with which the defendant was charged. Had a sequestration of witnesses been requested by the defendant through his counsel, the court would not have had the authority to exclude Detective Coleman, Mr. Chaisson, or Mr. Medice from the courtroom during the proceedings.  Counsel for the defendant appropriately refrained from objecting to their presence in the courtroom.  The failure of the court to exclude any witness from the courtroom does not equate to a violation of any constitutional right of a defendant, including a right to a fair trial.

The defendant alleges that all the state witnesses remained in the courtroom and testified after hearing testimony of other witnesses.  This court's review of the trial transcript reveals that the only state's witness who testified and who could have been properly excluded from the courtroom was Tiffany Diggs.  Contrary to the defendant's assertion, Christina Farmer, the Houma Police Department evidence custodian and crime scene technician, was called as a witness by the defense, not the prosecution (Trial Transcript, September 10, 2009, p. 38).  Her testimony did not contradict the testimony of the witnesses to the incident in question, but was elicited only for the purpose of confirming the police department's failure or inability to collect evidence or otherwise properly maintain the crime scene.

With regard to Tiffany Diggs, the defendant alleges that the three other state witnesses were in the courtroom when she testified. He has not specifically suggested that Tiffany Diggs was in the

courtroom when any of those three witnesses testified.  As explained above, it was proper for Detective Coleman, Mr. Chaisson, and Mr. Medice to be present in the courtroom when Tiffany Diggs testified.

The presiding judge at the defendant's trial was the undersigned judge.  It is a fact that Tiffany Diggs was not present in the courtroom during the testimony of any of the other three witnesses.  There would have been no factual basis for any objection by defense counsel with regard to her presence, so, obviously, he made no such objection.  Tiffany Diggs was incarcerated at the time she was called to testify and she was brought in to court for the first time following a lunch recess, after both Mr. Chaisson and Mr. Medice testified, but before the testimony of Detective Coleman.

Under these circumstances, defense counsel's failure to request sequestration of  witnesses did not rise to the level of deficient performance.  This allegation of error on defense counsel's part is without merit.[20]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[21] and by the Louisiana Supreme Court.[22]

Petitioner has not shown that the denial of this claim by the state courts was contrary to, or involved an unreasonable application of, clearly established federal law.  On the contrary, it is evident that he has failed to make the required showing on either prong of the Strickland test.  For the reasons explained by the state district court, there was no additional benefit defense counsel could have gained by requesting sequestration.  The only prosecution witness who would have been subject to a sequestration order was Diggs; however, because she was incarcerated and brought into

---

[20]  State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, pp. 5-7.

[21]  State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[22]  State ex rel. Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

the courtroom only for her own testimony, she was effectively sequestered even without an order. As a result, petitioner cannot show that his counsel performed deficiently by failing to go through the motions of requesting an ultimately futile and unnecessary sequestration order. Further, because no other prosecution witness would have been subject to a sequestration order, petitioner obviously cannot show that he was prejudiced by the failure to request such an order.

### 2.  Failure to Present Testimony or Other Evidence
### Concerning Shelby Norman's Version of Events

Second, petitioner claims that counsel was ineffective for failing to present evidence concerning Shelby Norman's version of events.  The state district court rejected that claim, holding:

> According to the defendant, he was deprived of his right to a fair trial by trial counsel because counsel did not call Shelby Norman to testify on behalf of the defendant.  The defendant alleges ineffective assistance of counsel because his attorney failed to "object and find another way to present Norman['s] statement."
> The defendant alleges that Shelby Norman was present with him at Mr. Chaisson's home where Mr. Medice and Mr. Chaisson were stabbed.  He claims that if Shelby Norman had testified at his trial, he would have offered exculpatory evidence on the defendant's behalf.  The defendant's claim is based on his reading of an incident statement Mr. Norman gave to the police.
> On September 8, 2013, the first day of the defendant's trial and immediately before jury selection began, the court asked the attorneys if there were any preliminary matters to be addressed.  The prosecutor advised the court that he did not intend to call Mr. Norman as a witness, but he understood that the defendant intended to call Mr. Norman to testify at the defendant's trial.  Defense counsel confirmed that possibility.  Mr. Norman was present in court at the time with his attorney.  Mr. Norman's attorney made clear to the court that if called by the defendant as a witness in the case, Mr. Norman would assert his fifth amendment right against self-incrimination.  With that understanding, and with the consent of the state and the defendant, Mr. Norman was excused by the court.  He was not called as a witness and he did not assert his privilege against self-

incrimination in front of the jury subsequently selected.   (<u>Trial Transcript</u>, September 8, 2009, pp. 7-10.)

According to the defendant, "reasonable competent counsel" would have found a way to compel the testimony of Mr. Norman or otherwise found a way to make his pretrial statement to the police part of the evidence in this case.   The defendant alleges the state dismissed its charges against Mr. Norman arising as a result of the incident which led to prosecution of the defendant and then threatened him with prosecution if he "confessed to any illegal activities."   He claims this prompted Mr. Norman to invoke his fifth amendment privilege against self-incrimination, thus making him unavailable to testify for the defendant at his trial.

The defendant has furnished to the court an excerpt from Mr. Norman's statement to the police upon which the defendant relies in support of his complaint.   This excerpt indicates Mr. Norman told the police that he and the defendant went to Mr. Chaisson's house so that the defendant could sell drugs to Mr. Medice.   When an argument ensued and Mr. Medice and the defendant "got into a tussle," Mr. Norman exited the residence.   Although he did not know who attacked whom first, he confirmed both the defendant and the victims had knives.   He said the defendant hit Mr. Medice with a board and it broke.   Mr. Norman denied harming anyone.

The defendant alleges Mr. Norman's statement to the police constituted exculpatory evidence that the jury should have received because it tended to show that the purpose of the defendant's visit to Mr. Chaisson's home was to confect a drug deal, not to rob anyone.

Mr. Norman's out-of-court statement to the police about his involvement with the defendant at Mr. Chaisson's home when the victims were stabbed was obviously hearsay and, as such, was not admissible at the defendant's trial under the Louisiana Code of Evidence article 802.

However, when a witness is unavailable to testify because he asserts a privilege against self-incrimination, a statement against his interest may be admissible under Louisiana Code of Evidence article 804(B)(3), to wit:

> "B.   Hearsay exceptions.   The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *

- 27 -

"3.  Statement against interest.  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

It appears the statement made by Mr. Norman to the police does not qualify as a statement against Mr. Norman's interest within the meaning of article 804(B)(3).  In the statement he was very careful to distance himself from any involvement in any criminal activity, either alone or in conjunction with the activities of the defendant.  As such, the statement was inadmissible hearsay at the defendant's trial.  Even if the court were to assume that the statement tended to expose Mr. Norman to criminal liability, and the defendant had attempted to offer the statement as evidence at his trial in order to exculpate himself, the statement would not have been admissible because evidence of corroborating circumstances would not have clearly indicated the trustworthiness of the statement.  Mr. Norman's version of the events in the house differs significantly from the version offered by the two victims who testified they were present in the house at the time the events occurred, and Mr. Norman's explanation of the purpose of the defendant's visit to the house differs entirely from the testimony of Tiffany Diggs.  She testified that both Mr. Norman and the defendant were sent to the house to rob Mr. Medice.  At the time the statement was made, Mr. Norman was considered a suspect in connection with the criminal activity that occurred at the victim's home and, in fact, he was subsequently charged along with the defendant with the attempted first degree murder or Mr. Chaisson and Mr. Medice.

Under these circumstances, and as matter of Louisiana evidentiary law, the out-of-court statement of Mr. Norman could not be admitted as evidence at the defendant's trial.  Any failure of defense counsel to "find another way," or circumvent, the Louisiana rules of evidence, to get the statement before the jury did not constitute deficient performance.

Further, the defendant had no constitutional right to compel the testimony of Mr. Norman at the defendant's trial. Based on the trial testimony of the victims, Mr. Norman, if called to testify, would have had reasonable concerns about self-incriminating disclosures. Both victims testified that Mr. Norman assisted the defendant in robbing Mr. Medice by hitting him with a board. As a result, Mr. Norman's exercise of his constitutional right against self-incrimination at the defendant's trial was reasonable and legitimate.

Finally, the defendant argues that counsel's performance was deficient because he did not attempt to force the receipt into evidence of Mr. Norman's hearsay statement to the police without his testimony at trial, based on the defendant's constitutional right to compel testimony, notwithstanding Louisiana Code of Evidence article 804(B)(3) to the contrary. The defendant's argument is not well-founded. The Louisiana evidentiary framework reflected by article 804(B)(3) is within the constitutional parameters of a defendant's right to present a defense. State v. Hammons, 597 So.2d 990 (La., 1992).

The court does note that counsel for the defendant did, in fact, through his cross-examination of Detective Coleman, attempt to offer the out-of-court statements made by Mr. Norman to the police. The court refused to permit him to do so. (Trial Transcript, September 9, 2009, pp. 180-82).

Based on the foregoing, the defendant is not entitled to post conviction relief based on his allegations that trial counsel was ineffective and denied him a fair trial for failing to attempt to offer Mr. Norman's testimony at trial or evidence of his out-of-court statement to the police.[23]

Without additional reasons assigned, petitioner's related writ applications were then also denied by the Louisiana First Circuit Court of Appeal[24] and by the Louisiana Supreme Court.[25] For the

---

[23] State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, pp. 7-10.

[24] State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[25] State ex rel. Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

following reasons, petitioner again has not shown that the denial of this claim by the state courts was contrary to, or involved an unreasonable application of, clearly established federal law.

As noted, it was made clear at the beginning of trial that, if called, Norman would invoke his rights under the Fifth Amendment.  In light of that reality, defense counsel would have gained nothing by calling Norman to the stand.  On the contrary, forcing Norman to invoke his right against self-incrimination in front of the jury would most likely have hurt the defense, because the jurors might have inferred that his refusal to testify was an indication that his actions with respect to this incident in fact constituted a crime – an inference which could damage petitioner, who, at a minimum, served as Norman's cohort in the events.  Therefore, defense counsel acted wisely, not deficiently, in avoiding calling Norman to the stand.

As to Norman's statement to the police, it would have been futile for defense counsel to attempt to enter the statement into evidence.  As noted by the state district court, the statement was inadmissible hearsay.  Counsel is not ineffective for failing to make a meritless attempt to introduce inadmissible evidence. Garza v. Stephens, 738 F.3d 669, 677 (5th Cir. 2013), cert. denied, 134 S. Ct. 2876 (2014).

### 3.  Failure to Impeach

Third, petitioner argues that his counsel was ineffective for failing to properly impeach Medice.  The state district court denied that claim, holding:

> By way of this assignment of error, the defendant claims trial counsel was constitutionally ineffective because he failed to properly impeach Mr. Medice when he testified at the defendant's trial. According to the defendant, Mr. Medice claimed to have been stabbed by the defendant eighteen times during his altercation with

the defendant, but a medical report showed that he was stabbed only six times, fewer than the defendant himself.

A review of the trial transcript reveals that during direct examination of Mr. Medice by the state, he testified that he "was robbed and stabbed 18 times and once in the lung." (Trial Transcript, September 9, 2009, pp. 39, 52.)  He pointed out that all the stab wounds were above his waist and stated "I got stabs that they didn't even count, they glued them.  I had two doctors sewing me and three girls holding me."  (Trial Transcript, September 9, 2009, p. 60.) During cross-examination, he was not questioned about the number of stab wounds.

Attached to the defendant's post conviction relief application is a medical report from the Terrebonne General Medical Center emergency medical department which the defendant contends summarizes Mr. Medice's injuries during his scuffle with the defendant.  The report indicates Mr. Medice suffered "multiple stab wounds" and the report lists seven separate wounds, all to the upper torso, measuring between one centimeter and seven centimeters, that were sutured.  The locations of the wounds were consistent with the testimony of Mr. Medice.

In order to impeach the testimony of Mr. Medice to show that he was inaccurate about the number of stab wounds, counsel for the defendant would have had to offer extrinsic evidence of the stab wounds, perhaps through the emergency room records.  It is certainly understandable why counsel, as a matter of strategy, might not have wanted to offer evidence confirming the exact number of stab wounds, inasmuch as that evidence might have impressed upon the jury the severity of the wounds, and at the same time confirmed that suffered a number of cuts that might not have been officially classified as "wounds."

In any event, the court will assume for the purpose of argument only that defense counsel fell below a reasonable standard of representation by failing to offer evidence to show that Mr. Medice exaggerated the extent of his injuries at the hands of the defendant. Nevertheless, the defendant is not entitled to post conviction relief because he was not sufficiently prejudiced by any such deficiency on defense counsel's part as required by Strickland, supra.  There is no reasonable probability that but for counsel's alleged deficient performance, the result of the proceeding would have been any different.  The impeachment evidence that the defendant claims his attorney should have offered at trial shows seven significant stab wounds, including wounds to Mr. Medice's chest, back, and forehead.

> These injuries alone were more than sufficient to justify the jury's conclusion that the defendant, beyond a reasonable doubt, specifically intended to kill Mr. Medice. It is not likely that the defendant's argument to the effect that he only stabbed the victim seven times, not eighteen times would have changed that finding.[26]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[27] and by the Louisiana Supreme Court.[28]

As an initial matter, the undersigned finds that the state district court was too generous in assuming for the purposes of discussion that counsel's actions constituted deficient performance. It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's

---

[26] State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, pp. 10-12.

[27] State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[28] State ex rel. Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Id.

Here, there were ample reasons for defense counsel to avoid the suggested line of impeachment.  First, as the state court acknowledged, many of Medice's injuries were not in dispute, and counsel would not have been unreasonable for opting to avoid submission of additional damning evidence of the severity of the undisputed injuries.  Second, as the state court also noted, Medice testified that he had wounds "they didn't even count"; therefore, even if he had been questioned as to disparity between the number of wounds recounted in his testimony and the number documented in his medical records, he obviously had an explanation prepared.  Third, cross-examining a severely injured victim by suggesting that he is exaggerating his wounds is a tricky at best – jurors may well be offended if defense counsel is seen as badgering the victim in such a respect.  Fourth, in any event, there was little to be gained by such a tactic – the fact that Medice was horribly injured was uncontested, and there is no reason to believe that the jurors would have been less likely to convict if defense counsel had established that Medice had in fact been stabbed "only" six or seven times – a number that would still be far beyond the pale for a reasonable juror.

In light of all of these considerations, it simply cannot be said that defense counsel performed deficiently in failing to pursue this line of impeachment or that petitioner suffered any prejudice as a result.

<u>4.  Failure to Call Defense Witness</u>

Fourth, petitioner argues that his counsel was ineffective for failing to call Gustavia

Brown to testify at trial.  The state district court denied that claim, holding:

> In his fourth assignment of error, the defendant claims that he was denied his constitutional right to effective assistance of counsel because his attorney failed to call Gustavia Brown as a witness. Gustavia Brown did not testify at the defendant's trial.
>
> According to Detective Coleman who testified at the defendant's trial, it was the defendant who told the police when he was taken into custody that the knife used to stab Mr. Medice was at the home of his cousin, Gustavia Brown, on Morgan Street. Detective Coleman alleged that Ms. Brown was surprised to learn the knife was at her house, and she surrendered the knife to the police after defendant on the telephone directed her to its location in a bedroom.  The knife, which was introduced into evidence, had a brown handle and a blade four or five inches long.  (<u>Trial Transcript</u>, September 9, 2009, p. 143-145).  No witness at the defendant's trial identified this knife as the knife used by the defendant to stab his victims.
>
> Attached to the defendant's petition for post conviction relief is an excerpt from a transcript of an interview of the defendant by Detective Coleman.  During the interview, the defendant admitted he went to Mr. Chaisson's house with a knife.  When asked where the knife was, the defendant repeatedly stated he "got rid of it."  Under persistent questioning he admitted that the knife was at his grandmother's house in Raceland.  Although the information in the statement differs from the information given by Detective Coleman in court regarding the location of the knife, the court notes that only an excerpt of the interview has been submitted by the defendant.  The court does not have the benefit of the entire interview of the defendant by Detective Coleman.
>
> Additionally, the defendant has submitted to the court a one page written statement purportedly from Gustavia Brown dated January 13, 2010, which reads as follows:
>
>> "I Gustavia Brown Given this sign affidavit saying that I got [tired] of Detective [Dana] Coleman calling me repeatedly on my cell phone asking me to bring several items including the knife.  I went into the

kitchen and got a steak knife and brought it to the
Houma Police Station to Detective [Dana] Coleman.
So, he could leave me alone[.]  Where Det. told me
where the knife was there was none, so I went into the
kitchen a[nd] got any knife[.]  I would like to know
why I, Gustavaia Brown, wasn't called to the witness
stand?  To testify for Ronald Lee Poindexter[.]  His
lawyer didn't call me to the stand[.]  [H]e said they
didn't need me as a witness."

The court can only speculate as to why Gustavia Brown was
not called to testify at the defendant's trial.  Again, the court will
assume for the purpose of argument only that defense counsel fell
below a reasonable standard of representation by failing to call Ms.
Brown to show that the knife she delivered to Detective Coleman was
not used by the defendant to stab either Mr. Medice or Mr. Chaisson.
Even under this assumption, the defendant is not entitled to post
conviction relief because he was not sufficiently prejudiced by any
such deficiency on defense counsel's part as required by Strickland,
supra.  There is no reasonable probability that but for counsel's
alleged deficient performance, the result of the proceeding would
have been any different.  The defendant admitted to Detective
Coleman that he went to Mr. Chaisson's residence armed with a knife.
The fact that the knife produced by Ms. Brown may or may not have
been the weapon used by the defendant, is of no consequence.

Nothing has been offered by the defendant to suggest that Ms.
Brown wound have testified that the defendant was not armed with
a knife, as he admitted to Detective Coleman, or that he did not stab
either victim.  As a result, it is highly unlikely that her testimony
regarding the knife she delivered to the police would have made any
difference in the verdicts returned by the jury in this case.  This
assignment of error by the defendant is without merit.[29]

---

[29]  State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, pp. 12-14.

Without additional reasons assigned, petitioner's related writ applications were then also denied by

the Louisiana First Circuit Court of Appeal[30] and by the Louisiana Supreme Court.[31]

        The undersigned will pretermit a determination as to whether the defense counsel's

failure to call Brown to testify constituted deficient performance, because, even if it did, petitioner

still cannot show the prejudice required by Strickland.  Even if Brown had been called, and even if

the jury had found her testimony credible, which is doubtful at best,[32] her testimony was largely

irrelevant.  There was no dispute as to the fact that petitioner used **a** knife to stab the victims,

---

[30]  State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[31]  State *ex rel.* Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

[32]  Because Brown is petitioner's *cousin*, she was hardly a disinterested witness and, therefore, it is likely that her testimony would have been viewed with suspicion by the jury.  See, e.g., Ball v. United States, 271 Fed. App'x 880, 884 (11th Cir. 2008) (Petitioner's wife, brothers, and cousin "were all close family members with a strong motive to fabricate an alibi defense for him.  As such, their testimony would not have been particularly compelling and would have been subjected to vigorous impeachment."); Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *11 (E.D. La. Oct. 16, 2009) (noting that petitioner's "grandmother's testimony would have been of limited value because her close familial relationship to the petitioner would have made her testimony inherently suspect"), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *15 (E.D. La. June 6, 2008) (noting that petitioner's girlfriend would be an inherently suspect witness), aff'd, 370 Fed. App'x 531 (5th Cir. 2010); Talley v. Cain, Civ. Action No. 08-3542, 2009 WL 916331, at *11 (E.D. La. Apr. 6, 2009) (noting that testimony from the petitioner's mother would have been inherently  suspect); United States *ex rel.* Emerson v. Gramley, 902 F. Supp. 143, 147 (N.D. Ill.1995) (noting that petitioner's mother was an "interested witness" and, therefore, "would not have provided persuasive evidence of an alibi"), aff'd, 91 F.3d 898 (7th Cir. 1996).  Even absent that consideration, Brown's testimony would also be suspect on an entirely different ground.  If she is now telling the truth, then she admittedly lied to the police and gave them with false evidence – that alone would put her veracity in question in the eyes of the jurors.  Considering these factors, any suggestion that she would have been perceived by the jury as a reliable witness beggars belief.

gravely injuring them; whether the knife produced by Brown was that same – or a different – knife is of little consequence.  There is simply no reasonable probability that the result of the proceeding would have been different if only defense counsel had secured testimony showing that petitioner had in fact used another knife when he repeatedly stabbed the victims.

### 5.  Failure to Request Jury Instruction

Petitioner's last claim is that his counsel was ineffective for failing to request a jury instruction on the defense of justification.  The state district court rejected that claim, holding:

> In his final assignment of error, the defendant alleges his trial counsel was ineffective because he failed to object to the jury instructions given by the court and failed to request a specific explanation of the law on justification and its applicability to the defendant's claim of self-defense.
>
> At the conclusion of the closing arguments, the court instructed the jury in pertinent part as follows:
>
>> "The fact that an offender's conduct is justifiable, although otherwise criminal, is a defense to prosecution for any crime based on that conduct.  This defense of justification or self-defense can be claimed when a defendant commits a crime through the compulsion of threats by another of death or great bodily harm, and the defendant reasonably believes the person making the threats is present and could immediately carry out the threats if the crime were not committed."
>>
>> "A defendant who raises the defense that he was justified in committing an offense or that he acted in self-defense does not have to prove that fact.  To the contrary, the State must prove beyond a reasonable [doub]t that the offense was not justified; that is, that it was not committed in self-defense."
>>
>> "A person who is the aggressor or who brings on a difficulty cannot claim this right of justification or

> self-defense unless he withdraws from the conflict in
> good faith and in such a manner that his [adversary]
> knows or should know that he desires to withdraw
> and discontinue the conflict."

(Trial Transcript, September 10, 2009, pp. 92-93).

Apparently, in anticipation of the court's instruction regarding justification or self-defense, counsel for the defendant in his closing argument appropriately argued as follows:

> "The State of Louisiana has the burden to prove
> beyond a reasonable doubt that this was not self-
> defense.  They have that burden.  I don't have to prove
> it's self-defense.    And they can't eliminate the
> possibility that Ronald Poindexter was stabbed in the
> back early on in this struggle and that's his blood on
> the couch, because they never collected the blood
> because it doesn't add anything to the investigation."

(Trial Transcript, September 10, 2009, p. 75).

The court's instruction with regard to justification or self-defense was based on the provisions of La. R.S. 14:18 and La. R.S. 14:21.  Contrary to the defendant's assertion, the instruction was adequate to charge the jury "as to the law applicable to the case" as required by Louisiana Code of Criminal Procedure article 802.  The instruction was not erroneous, confusing, misleading, or prejudicial to the defendant in any manner.  In fact, the instruct was accurate, clear, and understandable and properly served the purpose of advising the jury as to the law of self-defense applicable to the case.  It was not error on the part of defense counsel to abstain from objecting to the charge or to fail to seek a more specific explanation of the applicability of the charge to the particular circumstances of the case against the defendant.

This fifth assignment of error asserted by the defendant is meritless.[33]

---

[33] State Rec., Vol. I of VII, Reasons for Judgment dated May 30, 2013, pp. 14-15.

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[34] and by the Louisiana Supreme Court.[35]

Obviously, counsel cannot be considered ineffective for failing to object to a proper jury instruction.  See, e.g., Phillips v. Cain, Civ. Action No. 07-9730, 2010 WL 5636230, at *8 (E.D. La. Oct. 16, 2010), adopted, 2011 WL 294291 (E.D. La. Jan. 21, 2011).  Here, petitioner does not argue, much less establish, that the jury instructions were in fact *improper*.  Rather, he simply argues that the instruction was incomplete because the jurors were not expressly told that they could find him not guilty if his actions were justified.

However, there is no reasonable basis for a conclusion that the jurors were misled on that point.  On the contrary, the jurors were instructed on justification/self defense, and they were expressly told that the *prosecution* bore the burden of proving beyond a reasonable doubt that the offenses were *not* committed in self-defense.[36]  They were also instructed:

> It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the Court to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack in evidence in the case.
> It is the duty of the jury, if not convinced of the guilt of the defendant beyond a reasonable doubt, to find him not guilty.

---

[34]  State v. Poindexter, No. 2013 KW 1236 (La. App. 1st Cir. Nov. 21, 2013); State Rec., Vol. VII of VII.

[35]  State ex rel. Poindexter v. State, 147 So.3d 182 (La. 2014) (No. 2013-KH-2998); State Rec., Vol. VII of VII.

[36]  State Rec., Vol. II of VII, transcript of September 10, 2009, p. 93.

The State must prove each and every element of the crime charged beyond a reasonable doubt.[37]

It is clear that the jury instructions concerning justification/self-defense, taken as a whole, were sufficient.  Therefore, petitioner cannot establish that his counsel performed deficiently in failing to request an additional instruction or that prejudiced resulted.

For all of the foregoing reasons, petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Ronald Poindexter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[37]  State Rec., Vol. II of VII, transcript of September 10, 2009, pp. 81-82.

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[38]

     New Orleans, Louisiana, this twentieth day of April, 2015.

                                  **SALLY SHUSHAN**
                                  **UNITED STATES MAGISTRATE JUDGE**

---

[38] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.